**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:                                                      Case No.: **6:15-bk-04479-KSJ**
                                                            Chapter 7
**Jeff Brannon** and
**Briggett Brannon**,

_____DEBTOR(S)_____/

**CHAPTER 7 TRUSTEE'S MOTION TO (I) APPROVE AN AUCTION AND SHORT
SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363(b), (f), and (m),
(II) BID PROCEDURES, (III) SURCHARGE AGREEMENT BETWEEN SECURED
LENDER AND THE ESTATE, (IV) SECURED LENDER'S RIGHT TO CREDIT BID,
AND (V ) OTHER RELIEF**

        COMES NOW, Marie E. Henkel, duly appointed Chapter 7 Trustee (the

"Trustee") for the above referenced debtor(s) (the "Debtor)"), pursuant to Sections 105 and 363

of the Bankruptcy Code hereby files this motion ("Motion"), by and through her undersigned

counsel, for entry of an order for authority to sell certain real property free and clear of all liens,

encumbrances, and interests.  In support thereof, the Trustee respectfully states as follows:

                                    **JURISDICTION**

        1.      This Court has jurisdiction to consider this Motion pursuant to

28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of

28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

        2.      Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

        3.      The basis for the relief requested are 11 U.S.C. §§ 363(b), (f), and (m),

Federal Rules of Bankruptcy Procedure 2002 and 6004.

<u>**BACKGROUND**</u>

4.      On May 22, 2015, the Debtors commenced this case by filing a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code (the "Petition Date").

5.      On August 18, 2015 this case was converted to a Chapter 7 case.

6.      Thereafter, the Trustee was appointed as the Chapter 7 trustee in this case.

7.      The Trustee held and concluded the 341 meeting of creditors on October 6, 2015.

8.      The Debtors scheduled a 100% ownership interest in the real property, located at 9322 Avenida San Pablo Unit 14D, Howey in the Hills, FL 34737 (the "Property") with the following legal description:

> **Unit 14D, MISSION CORONADO, a Condominium, according to the Declaration of Condominium, recorded in Official Records Book 3385, Pages 1468 through 1577, inclusive, of the Public Records of Lake County, Florida, as may be amended, together with all tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.**
>
> **Parcel ID # 22-20-25-1300000014D0**

9.      The Debtors scheduled the Property as having a value of $195,038.00 subject to a mortgage in favor of Nationstar Mortgage LLC. (the "Secured Creditor") in the amount owed on the Petition Date of approximately $318,345.00.

10.     The Trustee, after review of, among other things: (a) the Court file in this case, (b) a current title report provided by the Secured Lender as well as (c) a broker's opinion of value of the Property provided by the Secured Creditor, determined that an online "short sale" auction of the real property, in cooperation with and agreement of the Secured Creditor, is the best way for the estate to realize any benefit from the Property and generate any value for the estate.

11.     Public records and the Secured Creditor's title report reflect that the Property is encumbered by the statutory liens securing ad valorem real property taxes due to Lake County for tax year – N/A – in the approximate amount of $0.00 plus interest which is accruing daily (collectively the "Real Property Taxes").  In the event that the Secured Creditor is the winning bidder by credit bid, it shall either pay the Real Property Taxes at closing or take title subject to the Real Property Taxes.  In the event that the winning bidder is not the Secured Creditor, the Secured Creditor agrees to pay the Real Property Taxes at closing in addition to the surcharge.

12.     The Secured Creditor has represented and warranted that it possesses a valid, perfected, enforceable, and unavoidable first mortgage lien on the Property by virtue of a promissory note and mortgage recorded in the Official Records of Lake County, Florida, at O. R. Book 3778, Page 825, Instrument Number 2009069754, and as assigned by instrument recorded in O. R. Book 4235, Page 1207, Instrument Number 2012116296, and that as of the Petition Date, the total amount due to the Secured Creditor is $324,990.98, consisting of $317,772.27 in principal and $7,218.71 in interest and other fees (the "Secured Creditor Indebtedness").

13.     The Property, based on (a) the current title report provided to the Trustee, (b) the Schedule "D" filed by the Debtor; and (c) the claims register, may also be encumbered by liens asserted against it in the aggregate amount of $1,804.00, asserted by :

a.     Condominium Association Fees disclosed in Schedule "D" to Los Colinas HOA, Inc., 6972 Lake Gloria Blvd., Orlando, FL 32809, a/k/a Las Colinas Homeowners Association, Inc., c/o Leland Management, with a disclosed claim value of $1,444.00.

b.  Condominium Association Fees disclosed in Schedule "D" to Mission Coronado Condo. Assoc., c/o Watson Assoc. Mgmt., 1410 Palm Coast Parkway NW, Palm Coast, FL 32137, with a disclosed claim value of $360.00.

Based upon information provided by the Debtor, the Trustee believes that these claims are either disputed or completely unsecured given the value of the property and should be treated as general unsecured claims unless the alleged secured creditor timely objects in response to this Motion to the treatment of such claim as (at best) a general unsecured claim and substantiates to the Trustee and the Court's satisfaction the basis for such asserted secured claim.

**RELIEF REQUESTED**

14.    The Trustee requests the entry of an order pursuant to Section 363 of the Bankruptcy Code approving the sale of the Property by Auction (as defined below), using the services of ADC (as defined below), free and clear of all liens, claims, encumbrances, and interests.  As a material inducement to the Trustee's decision to pursue the proposed sale, the Secured Creditor consents to the Property's sale and the creation of a carve-out fund (the "Carve-Out Fund") that will provide for the costs of this case to paid and provide a recovery for other creditors.  The Trustee seeks to sell the Property under circumstances that could yield no sale proceeds to the junior lien holders and requests that any creditor (other than the Secured Creditor) asserting an interest or secured claim against the Property timely assert and substantiate the basis for such asserted interest or secured claim. Absent affirmative objection to the proposed sale by any affected interests (junior lienholders or otherwise), the Court will authorize the sale of the Property free and clear of any such asserted interest or security interest, with such claims, at best, being treated as a general unsecured claim.

## BASIS FOR RELIEF

### A.     The Auction and Sale of the Property Should Be Approved

15.     The Trustee seeks the Court's authority to sell the Property free and clear of all liens, claims, encumbrances, and interests, but otherwise "As-Is, Where-Is" and without representations or warranties of any type, express or implied, being given by the Trustee and her professionals, pursuant to the Auction procedures described below.

16.     Pursuant to Section 363(b) of the Bankruptcy Code, a trustee, after notice and hearing, may use, sell, or lease property of the Debtor's estate other than in the ordinary course of business. The Court should approve the sale if the Trustee can demonstrate a sound business justification for the sale and if the sale process is fair, open, and reasonable. *See Official Comm. Of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *see also In re Sarah's Tent, LLC*, 396 B.R. 571, 573 (Bankr. S.D. Fla. 2008).  Further, Bankruptcy Rule 6004(f) contemplates sales outside of the ordinary course of business made by public auction.

17.     The Trustee, through the services of Auction.com ("ADC"), intends to offer the Property for sale through an online auction (the "Auction") following a 21-day multi-channel marketing campaign with marketplace exposure on Auction.com, Trulia, and Zillow. During the 21-day marketing period, Joe Palmer (the "Listing Agent") will also list the Property on the Multiple Listing Service and hold at least two open houses, to the extent possible.    The Auction of the Property will commence after the 21-day marketing period per the advertised and applicable start and end dates/times.  If the Property receives a bid that is sufficient to meet the reserve price[1], then the Property is sold to the winning bidder.  If the reserve is not met by the

---

[1] The Trustee shall be advised of the amount of the Reserve Price prior to the Motion being filed, and will be provided a complete bidding history of the auction process, including the identity of each registered bidder, and to

end of the first Auction in which the property is placed, then ADC will advertise for a second seven day period and place the property for auction again, to commence one week later.  If the reserve price is not met at the second auction, ADC will advertise and commence a third auction one week later.  In summary, unless the reserve price is met, ADC will run three consecutive auctions in three consecutive weeks in order to provide the Property with sufficient exposure to the marketplace.  If the reserve price is not met at the third auction, the Secured Creditor will then utilize its right to purchase the Property by credit bid in the amount of the Reserve Price. As part of this process, there will be auction procedures, described below, to maximize the value of the Property.

18.     Given the auction procedures outlined herein, including but not limited to online marketing and the retention of an independent real estate broker as well as the online auction company, the Trustee believes that the proposed auction will facilitate a sale that will produce a reasonable sale price that will serve the best interests of the bankruptcy estate and its creditors.  As such, the Trustee, in the exercise of her business judgment, submits that the sale price resulting from the Auction will be fair and reasonable.

19.     The Trustee and ADC will use the following procedures to conduct the auction and sale of the Property.

- **Property to be Sold**: The Property that is offered at the auction shall be sold pursuant to Section 363 of the Bankruptcy Code free and clear of all liens, claims, encumbrances, and interests, but otherwise is "As-Is, Where-Is" and without representations or warranties of any given type given by Trustee and her professionals.

- **The Auction Date**: The first "Auction Date" shall not be set until entry of an order by the Bankruptcy Court approving this Motion.  The first "Auction Date" shall be a date selected by

_____

the extent necessary to protect the integrity of the process, any principals of any corporate bidder, and amounts of each successive bid.

ADC that is at least 21 days following the entry of an order by the Bankruptcy Court approving the retention of ADC; provided however that the Auction Date may be adjourned from time to time by posting a notice of adjournment on ADC's website.

• **Registration Process**: Each party wishing to participate in the Auction shall submit an on-line registration form on the website established by ADC for the Auction to qualify as a bidder.  The registration form shall, among other things, (i) contain such information as reasonably requested by ADC to identify the potential bidder and (ii) require a credit card authorization for payment of a deposit (in an amount to be determined by ADC in consultation with the Trustee), which deposit will either (a) not be charged, if the bidder is not the winning bidder, (b) not be charged, if the bidder is the winning bidder and timely consummates the sale pursuant to the Sale Documents, or (c) may be charged, if the bidder is the winning bidder but fails to timely consummate the sale, including fails to execute the Sale Documents promptly following completion of the Auction.  The Secured Creditor shall be deemed to be a qualified bidder at the auction and shall not be required to submit a registration form or deposit.  ADC, in consultation with the Trustee, shall have the right to disqualify any potential bidder as a qualified bidder if such bidder fails to complete the registration process.

• **Bid Procedure**: Prior to the commencement of the first Auction Date, the Secured Creditor shall provide a written notice (the "Secured Creditor Notice") to the Trustee and ADC of the amount of its credit bid pursuant to Section 363(k) of the Bankruptcy Code.  The Secured Creditor Notice shall also include the following information:  (i) a minimum purchase price for the sale of the Property acceptable to the Secured Creditor (the "Reserve Price"); (ii) the Secured Creditor's initial credit bid amount to serve as the opening bid for the Auction (the "Opening Bid"), which Opening Bid may be less than the Reserve Price; and (iii) the bidding increment(s) ("Bidding Increments") for each round of bidding after the Opening Bid.[2]  The Bidding Increment may be adjusted upwards or downwards during the Auction for each bidding round in the discretion of ADC to facilitate the most competitive bidding.  The Secured Creditor Notice shall be the sole authorization required by the Trustee and ADC to consider

---

[2] If not otherwise set forth in the Secured Creditor Notice, the Reserve Price, the Opening Bid, and the initial Bidding Increments may be established by ADC in consultation with the Trustee and the Secured Creditor; provided, however that ADC may adjust Bidding Increments upwards or downwards during the Auction in its discretion.

the submission of the Opening Bid and any competing bid(s) by the Secured Creditor pursuant to Section 363(k) of the Bankruptcy Code.[3]

- **Winning Bid Amount**: The "Winning Bid Amount" shall be the highest or otherwise best bid selected by the Trustee and ADC, consistent with the Secured Creditor Notice, during the Auction.

- **Buyer's Premium**:  In addition to the Winning Bid Amount, the winning bidder shall pay a "Buyer's Premium" equal to the greater of $2,500 or five (5%) of the Winning Bid Amount, which shall be paid at closing directly to ADC as its commission (the "Buyer's Premium").  ADC shall not be entitled to any other compensation.  No Buyer's Premium shall be paid when the highest bid is the Secured Creditor's credit bid.  ADC shall not split or otherwise share the Buyer's Premium with any other person or entity.  The estate shall not be responsible or obligated to pay any compensation to ADC.

- **Total Purchase Price:** The actual total purchase price ("Total Purchase Price") at closing will be equal to the Winning Bid Amount plus the Buyer's Premium.

- **Listing Agent's Commission**: The Listing Agent shall receive up to 3% of the Winning Bid Amount for any sale that closes to a third party buyer (the "Commission").  No Commission shall be paid when the highest bid is the Secured Creditor's credit bid.  The Listing Agent shall not be entitled to any other compensation.  The Listing Agent shall not split or otherwise share the Commission with any other person or entity, except that if the buyer is represented by a real estate agent, the Listing Agent and buyer's real estate agent may split or share the Commission by agreement.  The Secured Creditor agrees to pay the Commission when earned and the estate shall not be responsible or obligated to pay any compensation to the Listing Agent.

- **Carve-Out Fund**:  In order to provide for the payment of expenses in this Chapter 7 case and to afford general unsecured creditors an opportunity to participate in any recovery from the sale of the Property, the Secured Creditor has agreed that: (1) if the Winning Bid Amount is less than the allowed amounts owing to the Secured Creditor, then the

---

[3] Without limiting the foregoing, ADC shall be authorized to increase Bidding Increments automatically during the Auction on behalf of the Secured Creditor to the extent of the authorization provided for in the Secured Creditor Notice.

Bankruptcy Trustee will receive (a) 5% of the Winning Bid Amount plus the Listing Agent's Commission; or (b) 5% of the Reserve, in the event the Secured Creditor enters the winning bid (collectively the "Standard Carve-Out"); <u>provided however</u> that the Standard Carve-Out shall never be less than $7,500, exclusive of the Listing Agent's Commission, nor shall it exceed $ 50,000.00, exclusive of the Listing Agent's Commission; (2) if the Winning Bid Amount exceeds the amounts owing to the Secured Creditor, then the portion which exceeds the amounts owing to the Secured Creditor and any valid and substantiated junior secured lienholder (the "Surplus") shall be retained by the Chapter 7 Trustee and no carve-out shall be paid; however, if the Surplus is less than the Standard Carve-Out set out above by any amount ("Short Surplus Amount") then the Secured Creditor consents to paying the Bankruptcy Trustee an amount equal to the Short Surplus Amount; and, (3) the Trustee shall be provided additional insurance by the Secured Creditor covering the Trustee and the estate from liability during the sale process and up through and including the closing of any sale.  The cost of the insurance shall be billed directly to the secured Creditor and the expense of the insurance shall not be paid by the estate, but shall be paid by the Secured Creditor.

• **Back-Up Bidder**:  ADC shall be authorized, but not required, to accept the second highest bid submitted during the auction as a "back-up" bid in the event that the winning bidder fails to consummate the sale transaction.[4]

• **Sale Documents**:  Within five days following the closing of the auction, the winning bidder shall execute a sale agreement or other applicable sale documents as required by the Trustee (the "Sale Documents").

20.    Accordingly, the Trustee submits that the sale of the Property pursuant to the above Auction process is reasonable under Section 363(b) of the Bankruptcy Code.

**B.    <u>The Sale of the Property Should Be Approved Free and Clear of All Interests</u>**

21.    Pursuant to Section 363(f) of the Bankruptcy Code, the trustee may sell property free and clear of any interest in such property to an entity other than the estate if (1) permitted under applicable non-bankruptcy law; (2) the party asserting such interest consents; (3)

---

[4] Acceptance of a "back-up" bid and proceeding to consummate a transaction with the "back-up" bidder shall be without prejudice to any claim of the Trustee against the winning bidder for failing to proceed. All rights are reserved.

the interest is a lien and the purchase price at which the property is to be sold is greater than the aggregate value of all liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the party asserting the interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. *See In re Smart World Techs.*, LLC, 423 F.3d 166, 169 n.3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests . . . It thus allows purchasers . . . to acquire assets [from a debtor] without any accompanying liabilities."); *see also In re MMH Auto. Group, LLC*, 385 B.R. 347, 367 (Bankr. S.D. Fla. 2008).

22.    The Trustee states that she shall satisfy Section 363(f)(2) of the Bankruptcy Code because the Secured Creditor consents to a sale of the property under Section 363(f)(2) of the Bankruptcy Code, free and clear of all liens, claims, encumbrances, and interests.

23.    The Trustee requests that any creditor (other than the Secured Creditor) asserting an interest or secured claim against the Property, including but not limited to all creditors listed in the Debtor's Schedule D, after proper notice is given, be required to timely assert and substantiate the basis for such asserted interest or secured claim by filing and serving responsive papers no later than five (5) days prior to the hearing on this Motion, or the Court will authorize the sale of the Property free and clear of any such asserted interest or security interest, with such claims, at best, being treated as a general unsecured claim.[5]  Failure to object after proper notice and opportunity to object is deemed consent. *See BAC Home Loans Servicing LP v.* Grassi, 2011 WL 6096509 (1st Cir. BAP Nov. 21, 2011); *Citicorp Homeowners Servs., Inc. v.* Elliott, 94 B.R. 343 (E.D. Pa. 1988); *In re* Gabel, 61 B.R. 661 (Bankr. W.D. La. 1985); *Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281 (7th Cir.); *In re Harbour E. Dev., Ltd.*, 2012WL1851015, at *12 (Bankr. S.D. Fla., May 21, 2012).

---

[5] The Trustee reserves the right to dispute both the alleged validity and amount of any such claim.

24.     Accordingly, under Section 363(f)(2) of the Bankruptcy Code, the Trustee seeks authority to sell the Property free and clear of all liens, claims, encumbrances, and interests but otherwise "As-Is, Where-Is" and without representations or warranties of any type given by the Trustee or her professionals.  Notwithstanding that the Trustee will seek authority to execute all documents and instruments she deems reasonable, necessary and/or desirable to close the sale, the only documents that the Trustee shall be required to deliver to close shall be (a) a Trustee's Deed, and (b) a copy of the Final Sale Order.

25.     The Secured Creditor agrees to pay at closing (1) all outstanding real estate taxes, including any prorated amounts due for the current tax year; (2) any HOA fees required be paid under applicable state and federal law, including any post-petition HOA fees required to be paid under applicable state and federal law, or the equivalent to twelve months' assessments; (3) all closing costs excluding professional fees but including State Documentary Stamps for the entire closing price pursuant to Florida Statute Sections 201.01 and 201.02; and (4) the carve out to the Trustee (as detailed above).  Any payments by the Secured Creditor as stated herein shall be subject to any and all limitations on the Secured Creditor's liability for any fees and costs under applicable law.

### C.     The Sale Will Be Undertaken by the Buyer in Good Faith

26.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under Section 363(b) was later reversed or modified on appeal.

27.     The sale should be found to have been in good faith if the Trustee can demonstrate the transaction occurred at arm's-length and without fraud or collusion. *See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276

(2d Cir. 1997) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." (citation omitted)); see *also In re Lorraine Brooke Associates, Inc.*, No. 07-12641 2007 WL 2257608 (Bankr. S.D. Fla. Aug. 2, 2007) (holding that a sale was entitled to the protections of Section 363(m) of the Bankruptcy Code when it was based upon arm's length bargaining and without collusion).

28.     The Trustee asserts that the sale of the Property pursuant to the auction will utilize a competitive and transparent marketplace that facilitates an arm's-length sale without fraud or collusion.  Accordingly, the Trustee respectfully requests that the Court find that the purchaser(s) will be entitled to the protections of Section 363(m) of the Bankruptcy Code.

29.     The Trustee further states that:

(a)     the Trustee has reviewed the tax implications of the proposed Sale and has determined that the proposed sale will not result in a capital gains tax event to the estate or other taxable event which would negate the benefit realized from the Carve Out;

(b)     the Trustee has determined, based upon a review of the schedules and information derived from the 341 meeting, that there will likely be a meaningful distribution to allowed creditors based upon the understanding that the final sale price and the total dollar amount of claims to be filed in this case are both unknown and can only be estimated at this time; and

(c)     given the information available at this time, the Trustee has made an educated evaluation and determined that the proposed Sale is in the best interest of the estate and its creditors.

30.    The Trustee respectfully requests that this Court: (a) waive the 14 day stay pursuant to Rule 6004(h), deem the sale order enforceable immediately upon entry, and authorize the Trustee to close on the sale immediately upon entry of the Final Sale Order; (b) authorize the Trustee to take all actions and execute all documents she deems reasonable, necessary and/or desirable to effectuate the requested relief; (c) retain sole and exclusive personal subject matter jurisdiction to implement, interpret, and enforce the terms of this Motion and the Final Sale Order; and (d) adjudicate all claims, controversies, and/or disputes arising from or related to the proposed sale.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter orders approving the Auction and Bid Procedures, the short sale of the Property pursuant to Sections 105 and 363 of the Bankruptcy Code, approve the "Carve Out" and for such other and further relief as this Court deems just and equitable under the circumstances of the case.

Date: January 28, 2016

Respectfully Submitted,

/s/ Marie E. Henkel
Marie E. Henkel, Trustee
Florida Bar No. 260320
3560 South Magnolia Avenue
Orlando, FL 32806
Telephone : (407) 438-6738
Facsimile : (407) 858-9466

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2016, the foregoing *Chapter 7 Trustee's Motion to (I) Approve An Auction and Short Sale of Real Property Free and Clear of Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(b), (f), and (m), (II) Bid Procedures, (III) Surcharge Agreement Between Secured Lender and the Estate, (IV) Secured Lender's Right to Credit Bid, and (V) Other Relief* was furnished by U.S. Mail, postage prepaid, or by electronic delivery to: Jeff Brannon and Briggett Brannon, 17418 Villa City Rd., Groveland, FL 34736

*(Debtors)*; Joel L Gross, Esq., The Law Office of Joel L. Gross PA, 655 West Highway 50, Suite 101, Clermont, FL 34711 *(Attorney for Debtor)*; Joe Palmer of Adams, Cameron & Company, Realtors, 759 W. Granada Blvd., Ormond Beach, FL 32174 *(Listing Agent)*; Auction.com, LLC, Attn : Charlie Lee, EVP, 1 Mauchly, Irvine, CA 92618 *(Auctioneer)*; United States Trustee, 400 W. Washington St., Ste. 1100, Orlando, FL 32801; Nationstar Mortgage LLC, c/o Samantha Carr, Esq., sacarr@logs.com; and all parties on the mailing matrix attached.

Additional copies furnished by Certified Mail to: Leland Management, Registered Agent for Los Colinas HOA, Inc., a/k/a Las Colinas Homeowners Association, Inc., 6972 Lake Gloria Blvd., Orlando, FL 32809; and Janet Pratt, Registered Agent for Mission Coronado Condominium Association, Inc., 10400 CR 48, Howey in the Hills, FL 34737.

*/s/ Kristen L. Henkel*
Kristen L. Henkel, Esq.
Florida Bar No. 81858
M. E. Henkel, P.A.
3560 South Magnolia Avenue
Orlando, Florida 32806
Telephone : (407) 438-6738
Facsimile : (407) 858-9466
khenkel@mehenkel.com