ORDERED.

Dated:  April 07, 2016

_____
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:  　　　　　　　　　　　　　　　　　　Case No.: **6:15-bk-04479-KSJ**
　　　　　　　　　　　　　　　　　　　　　　Chapter 7
**Jeff Brannon** and
**Briggett Brannon**,

　　　　　DEBTOR(S)　　　　　/

**ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363(b), (f), and (m)**

THIS CASE came before the Court for hearing ("Sale Hearing") on March 31, 2016 at 2:00 p.m., upon the Chapter 7 Trustee's Motion To Sell Real Property Free And Clear of Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(b), (f), and (m) (docket no. 51) ("Sale Motion"), by which Marie E. Henkel, Chapter 7 Trustee ("Trustee") for the above referenced debtor ("Debtor"), seeks authority to sell, free and clear of all liens, encumbrances, and interests, certain real property owned by Debtor, located at 9322 Avenida San Pablo Unit 14D, Howey in the Hills, FL 34737 ("Property") with the following legal description :

> Unit 14D, MISSION CORONADO, a Condominium, according to the Declaration of Condominium, recorded in Official Records Book 3385, Pages 1468 through 1577, inclusive, of the Public Records of Lake County, Florida, as may be amended, together with all tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

Parcel ID # 22-20-25-1300000014D0

For the reasons set forth in the Sale Motion and on the record at the Sale Hearing, the Trustee has demonstrated that the sale of the Property on the terms contained in the Sale Motion is in the best interests of the Debtor's estate. Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. The relief requested in the Sale Motion is **GRANTED** and the sale of the Property by the Trustee pursuant to 363(b), (f) and (m) free and clear of all liens, claims, encumbrances, and interests, by auction, using the services of Auction.com ("ADC"), is hereby **APPROVED**, subject to the terms and conditions herein.

2. Notice of the Sale Motion was proper, and no objections to the Sale Motion were timely filed. Thus, to the extent any creditor (other than the Secured Creditor) asserts an interest or secured claim against the Property, such creditor is deemed to have consented to entry of this Order, and such creditor's claim shall not be a secured claim.

3. The creation and use by Trustee of a Carve-Out Fund, as defined and described herein below, is hereby approved.

4. ADC may take any actions necessary to facilitate the sale of the property, including but not limited to: marketing the Property itself or via a Listing Agent (as that term is defined in the Sale Motion), and conducting the auction of the Property using the following procedures:

    a. **The Auction Date**: The first "Auction Date" will be a date selected by ADC that is at least 21 days following the entry of an order approving this Motion; <u>provided however</u> that the Auction Date may be adjourned from time to time by posting a notice of adjournment on ADC's website.

    b. **Registration Process**: Each party wishing to participate in the Auction shall submit an on-line registration form on the website established by

    ADC for the Auction to qualify as a bidder. The registration form shall, among other things, (i) contain such information as reasonably requested by ADC to identify the potential bidder and (ii) require a credit card authorization for payment of a deposit (in an amount to be determined by ADC in consultation with the Trustee), which deposit will either (a) <u>not</u> be charged, if the bidder is not the winning bidder, (b) <u>not</u> be charged, if the bidder is the winning bidder and timely consummates the sale pursuant to the Sale Documents, or (c) may <u>be charged</u>, if the bidder is the winning bidder but fails to timely consummate the sale, including fails to execute the Sale Documents promptly following completion of the Auction. The Secured Creditor shall be deemed to be a qualified bidder at the Auction and shall not be required to submit a registration form or deposit. ADC, in consultation with the Trustee, shall have the right to disqualify any potential bidder as a qualified bidder if such bidder fails to complete the registration process.

c. **Bid Procedure**: Prior to the commencement of the first Auction Date, the Secured Creditor shall provide a written notice ("Secured Creditor Notice") to the Trustee and ADC of the amount of its credit bid pursuant to Section 363(k) of the Bankruptcy Code. The Secured Creditor Notice shall also include the following information: (i) a minimum purchase price for the sale of the Property acceptable to the Secured Creditor ("Reserve Price"); (ii) the Secured Creditor's initial credit bid amount to serve as the opening bid for the Auction ("Opening Bid"), which Opening Bid may be less than the Reserve Price; and (iii) the bidding increment(s) ("Bidding Increments") for each round of bidding after the Opening Bid.[1] The Bidding Increment may be adjusted upwards or downwards during the Auction for each bidding round in the discretion of ADC to facilitate the most competitive bidding. The Secured Creditor Notice shall be the sole authorization required by the Trustee and ADC to consider the submission of the Opening Bid and any competing bid(s) by the Secured Creditor pursuant to Section 363(k) of the Bankruptcy Code.[2]

d. **Winning Bid Amount**: The "Winning Bid Amount" shall be the highest or otherwise best bid selected by the Trustee and ADC, consistent with the Secured Creditor Notice, during the Auction.

e. **Buyer's Premium**: In addition to the Winning Bid Amount, the winning bidder shall pay a "Buyer's Premium" equal to the greater of $2,500.00 or five (5%) of the Winning Bid Amount, which shall be paid at closing

---

[1] If not otherwise set forth in the Secured Creditor Notice, the Reserve Price, the Opening Bid, and the initial Bidding Increments may be established by ADC in consultation with the Trustee and the Secured Creditor; <u>provided however,</u> that ADC may adjust Bidding Increments upwards or downwards during the Auction in its discretion.

[2] Without limiting the foregoing, ADC shall be authorized to increase Bidding Increments automatically during the Auction on behalf of the Secured Creditor to the extent of the authorization provided for in the Secured Creditor Notice.

    directly to ADC as its commission ("Buyer's Premium"). ADC shall not be entitled to any other compensation. No Buyer's Premium shall be paid when the highest bid is the Secured Creditor's credit bid. ADC shall not split or otherwise share the Buyer's Premium with any other person or entity. The estate shall not be responsible or obligated to pay any compensation to ADC.

f. **Total Purchase Price:** The actual total purchase price ("Total Purchase Price") at closing will be equal to the Winning Bid Amount plus the Buyer's Premium.

g. **Listing Agent's Commission**: The Listing Agent shall receive up to 3% of the Winning Bid Amount for any sale that closes to a third party buyer ("Commission"). No Commission shall be paid when the highest bid is the Secured Creditor's credit bid. The Listing Agent shall not be entitled to any other compensation. The Listing Agent shall not split or otherwise share the Commission with any other person or entity, except that if the buyer is represented by a real estate agent, the Listing Agent and buyer's real estate agent may split or share the Commission by agreement. The Secured Creditor agrees to pay the Commission when earned and the estate shall not be responsible or obligated to pay any compensation to the Listing Agent.

h. **Carve-Out Fund**: In order to provide for the payment of expenses in this Chapter 7 case and to afford general unsecured creditors an opportunity to participate in any recovery from the sale of the Property, the Secured Creditor has agreed that, (1) if the Winning Bid Amount is less than the allowed amounts owing to the Secured Creditor, then the Bankruptcy Trustee will receive (a) 5% of the Winning Bid Amount plus the Listing Agent's Commission; or (b) 5% of the Reserve, in the event the Secured Creditor enters the winning bid (collectively the "Standard Carve-Out"); provided however, that the Standard Carve-Out shall never be less than $7,500.00, exclusive of the Listing Agent's Commission; (2) if the Winning Bid Amount exceeds the amounts owing to the Secured Creditor, then the portion which exceeds the amounts owing to the Secured Creditor and any valid and substantiated junior secured lienholder ("Surplus") shall be retained by the Chapter 7 Trustee and no carve-out shall be paid; however, if the Surplus is less than the Standard Carve-Out set out above by any amount ("Short Surplus Amount") then the Secured Creditor consents to paying the Bankruptcy Trustee an amount equal to the Short Surplus Amount; and, (3) the Trustee shall be provided additional insurance by the Secured Creditor covering the Trustee and the estate from liability during the sale process and up through and including the closing of any sale. The cost of insurance shall be billed directly to the Secured Creditor and the expense of the insurance shall not be paid by the estate, but shall be paid by the Secured Creditor.

      i. **Back-Up Bidder**: ADC shall be authorized, but not required, to accept the second highest bid submitted during the Auction as a "back-up" bid in the event that the winning bidder fails to consummate the sale transaction.

      j. **Sale Documents**: Within five days following the closing of the Auction, the winning bidder shall execute a sale agreement or other applicable sale documents as required by the Trustee ("Sale Documents").

5. The Trustee's acceptance of a "back-up" bid and proceeding to consummate a transaction with the "back-up" bidder shall be without prejudice to any claim of the Trustee against the winning bidder for failing to proceed.

6. If the reserve is not met by the end of the first Auction, then ADC will advertise for a second seven day period and place the property for auction again to commence one week later. If the reserve price is not met at the second auction, ADC will advertise and commence a third Auction one week later. If the reserve price is not met at the third auction, the Secured Creditor may then utilize its right to purchase the Property by credit bid.

7. Secured Creditor agrees to pay at closing (1) all outstanding real estate taxes, including any prorated amounts due for the current tax year; (2) any HOA fees required be paid under applicable state and federal law, including any post-petition HOA fees required to be paid under applicable state and federal law; (3) all closing costs excluding professional fees but including State Documentary Stamps for the entire closing price pursuant to Florida Statute Sections 201.01 and 201.02; and (4) the carve out to the Trustee. Any payments by the Secured Creditor as stated herein shall be subject to any and all limitations on the Secured Creditor's liability for any fees and costs under applicable law.

Attorney, Kristen L. Henkel, is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.